## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNEMARIE TARARA, Individually and On Behalf of All Others Similarly Situated, | Case No.: 16-CV-10632 |
| Plaintiff, | |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| TREEHOUSE FOODS, INC., SAM K. REED, and DENNIS F. RIORDAN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Annemarie Tarara ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by TreeHouse Foods, Inc., ("TreeHouse" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by TreeHouse; and (c) review of other publicly available information concerning TreeHouse.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired TreeHouse securities between February 1, 2016, and November 2, 2016, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      TreeHouse is a food manufacturer that operates approximately 24 manufacturing facilities in the United States and Canada. The Company's stated goal is to be a leading supplier of private label food and products including coffee-creamer, canned soups, salad dressings, salsa and Mexican sauces, jams and pie fillings.

3.      On February 1, 2016, TreeHouse announced that it completed the acquisition of ConAgra Foods, Inc.'s ("ConAgra's") private brands operations.  The Company stated that it paid $2.7 billion in cash plus transaction expenses for the business.  TreeHouse touted the acquisition as a boon to the Company, stating, "[t]he acquisition of ConAgra's private brands operations meaningfully expands TreeHouse's presence in private label dry and refrigerated grocery, and will be called TreeHouse Private Brands."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's private label business was underperforming; (2) the Company's acquisition strategy

was underperforming; (3) that the Company had overstated its full-year 2016 guidance; and (4) that, as a result of the foregoing, Defendants' statements about TreeHouse's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

5. On November 3, 2016, TreeHouse lowered its full year adjusted earnings per share forecast to $2.80-$2.85, from $3.00-$3.10 due to underperformance of the Private Brands acquisition and over softness in the private label manufacturing business. The Company also announced the closure of a plant in Delta, British Columbia, and reported job cuts at its facility in Battle Creek, Michigan.

6. The Company also surprised investors by announcing the resignation of its newly-appointed President, Chris Sliva, who had been President for less than six months, and the appointment of a new Chief Financial Officer.

7. On the above news, the Company's shares fell $16.87 per share, or nearly 20%, to close at $69.72 per share on November 3, 2016.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, as TreeHouse is headquartered in this district.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Annemarie Tarara, as set forth in the accompanying certification, incorporated by reference herein, purchased TreeHouse common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant TreeHouse is incorporated in Delaware, and the Company's principal executive offices are located in Oak Brook, Illinois.  TreeHouse's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "THS."

15.     Defendant Sam K. Reed ("Reed") has served at all relevant times as the Company's Chief Executive Officer and Chairman.

16.     Defendant Dennis F. Riordan ("Riordan") served at all relevant times as the Company's Chief Financial Officer ("CFO") and currently serves as the Company's President effective November 3, 2016.

17.     Defendants Reed and Riordan (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of TreeHouse's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or

misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period begins on February 1, 2016. On that day the Company issued a press release announcing the completion of its acquisition of ConAgra's private brands operations, stating:

> OAK BROOK, Ill., Feb. 1, 2016 /PRNewswire/ -- TreeHouse Foods (NYSE: THS) announced today that it has completed the acquisition of ConAgra Foods' (NYSE: CAG) private brands operations. TreeHouse paid $2.7 billion in cash plus transaction expenses for the business and financed the transaction through the closing of its previously announced offerings of $775 million in aggregate principal senior notes due 2024 with a 6.0% annual interest rate and common stock issuance of 13.3 million shares at a price of $65per share (which includes the exercise, in full, of the overallotment option), aggregating $862.5 millionin gross proceeds.  The remainder of the purchase price was financed under the Company's revolving credit facility.

> "We are pleased to have closed the acquisition, and will continue to focus on driving shareholder value and offering our customers value without compromise through economies of scale, quality products and superior customer service," said Sam K. Reed, Chairman, President and Chief Executive Officer of TreeHouse Foods.

> "The Private Brands acquisition broadens our portfolio of offerings for our customers.  We remain unwaveringly committed to supporting our customers' efforts to build their corporate brands and offer consumers the best combination of choice and value," Mr. Reed continued.  "We are looking forward to working as one go-to-market team to achieve success and will work tirelessly to develop the systems and infrastructure to deliver a seamless integration."

> The acquisition of ConAgra's private brands operations meaningfully expands TreeHouse's presence in private label dry and refrigerated grocery, and will be called TreeHouse Private Brands.  Bay Valley Foods (with Flagstone Foods) and TreeHouse Private Brands will be the operating platforms of TreeHouse Foods, Inc.  Following the Private Brands acquisition, TreeHouse Foods, Inc. has pro forma sales of approximately $7 billion for the twelve months ended December 31, 2015, more than 50 manufacturing facilities and over 16,000 employees.

19.     On February 11, 2016, the Company issued a press release announcing fourth

quarter 2015 financial results, and announced financial guidance for 2016 of $2.95 to $3.10 in adjusted earnings per share. For the fourth quarter 2015, the Company announced earnings per share of $1.08 on net sales of $865.4 million. Commenting on the Company's results, Defendant Reed told investors:

> We finished the year strong, and our employees deserve a great deal of credit for continuing to focus on improving our operations and driving excellent margin progress. While overall market conditions remained soft and weakness in the Canadian dollar persisted, both of which weighed on our top line, we are very proud to have delivered margin expansion of 150 basis points in the fourth quarter.
>
> This year marks the beginning of an important journey for us, as we press forward with our strategic vision and relentlessly focus on tactical execution. We remain fully committed to growth and simplification, and believe that our greatest opportunities continue to lie ahead. We remain dedicated to building a private label platform that offers a broad portfolio of products that are important to our customers and supports their efforts to build their corporate brands, while offering consumers the best combination of choice and value.

20.     On February 18, 2016, the Company filed its annual report on Form 10-K with the SEC. The Company reiterated the results previously published in its press release for the fourth quarter 2015, and reported earnings per share of $2.67 on net sales of $3.2 billion. The Company also touted to investors the tremendous growth available for private label manufacturing in the United States:

> According to independent market research studies, private label grocery products have increased their market share in the United States from 12.7% in 1989 to approximately 17.8% in 2015. Despite gains in market share, private label penetration in the United States remains below that of many other developed economies, including France (27%), Spain (42%), Germany (35%), the United Kingdom (41%) and Switzerland (45%) (market research estimates based on 2014 data). Over time, we expect private label market share in the United States will approach the levels currently present in Europe, but due to structural differences, we do not anticipate this in the short term.

21.     On May 5, 2016, the Company issued a press release announcing first quarter results for the period ended March 31, 2016. Therein, the Company reported earnings per share

of $0.48 on net sales of $1.3 billion, "a 62.2% increase from 2015, driven by the Private Brands acquisition." The Company also "tightens full year 2016 adjusted earnings per share guidance range to $3.00 to $3.10," with Defendant Reed commenting in relevant part:

> We delivered sequential progress in the first quarter and are off to a solid start, despite the ongoing challenges of a stagnant retail landscape. In the first quarter, growth in retail single-serve coffee and broad gains in snacks led our combined Bay Valley Foods and TreeHouse Private Brands organization, while our cold season products such as non-dairy creamers, hot cereal, and soup were negatively affected by the unseasonably warm weather.

> I am very pleased with the progress our teams are making integrating the Private Brands business, and our sense of functional unity is growing. Our Private Brands team is already making great progress in customer service improvements and is starting to regain lost distribution that resulted from past service issues. Our integration activities are on track and on budget as a result of the strong collaboration of our teams during the transition.

22. On the same day, May 5, 2016, the Company filed its quarterly report on Form 10-Q with the SEC. The Company reiterated the results previously published in press release issued earlier that day, and noted its continued focus on expanding the Private Brands business, and the expected overall growth in the United States private label business.

23. On August 4, 2016, the Company issued a press release announcing second quarter results for the period ended June 30, 2016. Therein, the Company reported earnings per share of $0.27 on net sales of $1.5 billion, "a 103.0% increase from 2015, driven by the Private Brands acquisition." The Company also reaffirmed its 2016 outlook, with Defendant Reed commenting in relevant part:

> We continue to progress in accordance with our plans for the year and our second quarter results represent further sequential improvement. Total Company revenue was up significantly due to the Private Brands acquisition. Volume/mix grew 4% in North American Retail Grocery, representing one of our best quarters in many years. Our operating results continue to show steady improvement, as we focus on customers, categories, consumers, and organizational capabilities."

> The detailed integration of legacy TreeHouse and Private Brands is well underway, and we are gaining momentum. I'm pleased to report that we completed a virtually flawless integration of the acquired condiments business

onto the TreeHouse SAP system in early July, linking seven product categories and eleven plants that serve over 500 customers. The work that is being undertaken across the organization to establish standardized processes, organizational structures, functional responsibilities and reporting relationships is extraordinary and is a testament to the robust level of collaboration within our organization.

24. On the same day, August 4, 2016, the Company filed its quarterly report on Form 10-Q with the SEC. The Company reiterated the results previously published in its August 4, 2016 press release, and noted its continued dominance of the private label food manufacturing business, the success of the Private Brands acquisition, and the expected growth in the overall United States private label market.

25. On August 4, 2016, the Company announced that Christopher D. Sliva had been elected President of TreeHouse Foods. Defendant Reed commented on the appointment of Mr. Sliva:

> Chris' contributions over the last four years have both strengthened and advanced our organization and culture. I'm proud of the way Chris has led our Company through the operational complexity that is inherent in private label. Because of his leadership and efforts to focus our organization on simplification, our legacy business has delivered gross margin expansion year in, year out.

> Chris has also been the driving force in focusing our organization on the private label fundamentals of customers, categories, consumers and organizational capabilities. As we look forward, it is under Chris' tutelage that we are designing an organizational structure to deliver on the transformative potential of the TreeHouse promise to our customers.

26. The above statements contained in ¶¶18-25 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's private label business was underperforming; (2) that the Company's acquisition strategy was underperforming; (3) that the Company had overstated its full-year 2016 guidance; and (4) that, as a result of the foregoing,

Defendants' statements about TreeHouse's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

27.     On November 3, 2016, TreeHouse lowered its full year adjusted earnings per share forecast to $2.80-$2.85 per share from $3.00-$3.10.  In relevant part, the Company stated:

> "We are lowering our full year 2016 earnings expectations due to the combination of lower than expected third quarter sales from the Private Brands business, along with our belief that fourth quarter Private Brands sales will fall short of our goal to stem its year-over-year sales declines," said Mr. Reed.  "We do believe this is a short term situation. Our new go-to-market sales structure is designed to improve our ability to help customers merchandise and drive their private label programs.  Our resumed focus on our products and customers in the fourth quarter will quickly restore our Company to our original expectations for the combined TreeHouse Foods business."
>
> The Company expects fourth quarter GAAP and adjusted earnings to be in the range of $1.07 to $1.12per fully diluted share.  Because the Company cannot predict some of the items included in reported GAAP results, such as the impact of foreign exchange, the fourth quarter forecast for both GAAP and adjusted earnings are the same.  Please refer to the "Comparison of Adjusted Information to GAAP Information" below for further detail.  With regard to the full year, TreeHouse expects GAAP earnings to be in the range of $1.95 to $2.00 per fully diluted share and adjusted earnings to be in a range of $2.80 to $2.85 per fully diluted share. The difference between the high end and low end of the full year GAAP and non-GAAP guidance ranges is consistent with the $0.85 impact of adjusting items per fully diluted share for the nine months ended September 30, 2016, as outlined in the chart above.

28.     Defendant Reed, in commenting on the poor performance of the Private Brands business, stated in relevant part:

> The third quarter was a tale of two cities. Our legacy business continued to perform well, paced by Retail volume/mix growth of 4.6% and 80 basis points of direct operating income margin expansion.  On the other hand, while the Private Brands business showed sequential improvement, its results fell short of our expectations for the quarter.
>
> We believe the underperformance of the Private Brands business is attributable to our all-encompassing efforts to smoothly integrate the operations of the new business.  While we have made great progress in consolidating plants, stabilizing the workforce and reducing our reliance on the transition services, the shift in management attention led to less robust Private Brands sales than we experienced

in the legacy organization. We will be unveiling a new go-to-market sales structure to better align and focus our sales teams to drive new and consistent growth.

29.     The Company further announced the closure of a plant in Delta, British Columbia, and reported job cuts at its facility in Battle Creek, Michigan.  In relevant part, the Company stated:

OAK BROOK, Ill., Nov. 3, 2016 /PRNewswire/ -- TreeHouse Foods, Inc. (NYSE: THS) today announced its intention to close a facility in Delta, British Columbia and reduce its manufacturing footprint in Battle Creek, Michigan. The decision follows an analysis of the Company's plant network to align operations with the current and future needs of its customers and eliminate excess manufacturing capacity.

The Delta facility employs approximately 90 employees and produces frozen griddle products, primarily for the North American Retail Grocery segment. Production is expected to cease in early 2018. The Company operates two facilities in Delta, and this announcement only affects the frozen griddle facility.

The Battle Creek facility produces ready-to-eat cereal, primarily for the North American Retail Grocerysegment. The partial closure will affect approximately 100 of the current 160 employees over a 15 month period beginning in January 2017. The decision is being announced in advance of the downsizing in order to provide employees with as much notice as possible and to ensure a seamless transition for customers.

Both the Battle Creek and Delta griddle facilities were part of the Company's acquisition of the ConAgra Foods private brands business in February 2016. The Company will provide support to employees whose positions are being eliminated.

Total costs to close the Delta facility and downsize Battle Creek are expected to be approximately $14.7 million, or $0.16 per fully diluted share, of which approximately $6.8 million, or $0.08 per fully diluted share, is expected to be in cash. Components of the charges include non-cash asset write-offs of approximately $7.9 million, employee-related costs of approximately $4.6 million and other closure costs of approximately $2.2 million. The Company expects approximately $4.0 million and $3.1 million of the charges to be incurred in the fourth quarter of this year and the first quarter of 2017, respectively, with the balance of the charges being incurred through the end of 2018.

30.     Finally, the Company disclosed the resignation of its newly appointed President, Chirs Sliva, and the appointment of a new Chief Financial Officer.

31.     On this news, the Company's shares fell $16.87 per share, or nearly 20%, to close at $69.72 per share on November 3, 2016.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired TreeHouse's securities between February 1, 2016, and November 2, 2016, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, TreeHouse's common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of TreeHouse shares were traded publicly during the Class Period on the NYSE. As of September 30, 2016, the Company had 56,729,138 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by TreeHouse or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

       (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

       (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of TreeHouse; and

       (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

       37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

       38.     The market for TreeHouse's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, TreeHouse's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired TreeHouse's securities relying upon the integrity of the market price of the Company's securities and market information relating to TreeHouse, and have been damaged thereby.

       39.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of TreeHouse's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about TreeHouse's business, operations, and prospects as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about TreeHouse's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42.     During the Class Period, Plaintiff and the Class purchased TreeHouse's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Individual Defendants, by virtue

of their receipt of information reflecting the true facts regarding TreeHouse, their control over, and/or receipt and/or modification of TreeHouse's allegedly materially misleading misstatements and/or their associations with the Company which made him privy to confidential proprietary information concerning TreeHouse, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

44.     The market for TreeHouse's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, TreeHouse's securities traded at artificially inflated prices during the Class Period. On July 11, 2016, the Company's stock price closed at a Class Period high of $104.35 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of TreeHouse's securities and market information relating to TreeHouse, and have been damaged thereby.

45.     During the Class Period, the artificial inflation of TreeHouse's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about TreeHouse's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of TreeHouse and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

46.     At all relevant times, the market for TreeHouse's securities was an efficient market for the following reasons, among others:

(a)     TreeHouse stock met the requirements for listing, and was listed and actively

traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, TreeHouse filed periodic public reports with the SEC and/or the NYSE;

(c)     TreeHouse regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     TreeHouse was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for TreeHouse's securities promptly digested current information regarding TreeHouse from all publicly available sources and reflected such information in TreeHouse's stock price. Under these circumstances, all purchasers of TreeHouse's securities during the Class Period suffered similar injury through their purchase of TreeHouse's securities at artificially inflated prices and a presumption of reliance applies.

48.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of TreeHouse who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase TreeHouse's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

52.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for TreeHouse's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about TreeHouse's financial well-being and prospects, as specified herein.

54.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of TreeHouse's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about TreeHouse and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

55.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the

Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

56.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing TreeHouse's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of TreeHouse's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired TreeHouse's securities during the Class Period at artificially high prices and were damaged thereby.

58.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems that TreeHouse was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their TreeHouse securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     Individual Defendants acted as controlling persons of TreeHouse within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level position, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, Individual Defendants had direct and supervisory involvement in the

day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, TreeHouse and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their position as a controlling person, Individual Defendants is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  November 16, 2016

Respectfully submitted,

By:/s/ *Peter E. Cooper*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
1925 Century Park East, Suite 2100

Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
[Pro Hac Vice Pending]

**LAWRENCE, KAMIN, SAUNDERS &
UHLENHOP, L.L.C**
Mitchell B. Goldberg
John S. Monical
Peter E. Cooper
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Telephone: (312) 372-1947
Facsimile: (312) 372-2389
Email: mgoldberg@lksu.com
         jmonical@lksu.com
         pcooper@lksu.com
[Local Counsel]

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## TREEHOUSE FOODS, INC. SECURITIES LITIGATION

I, Annemarie Tarara, individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.    I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.    I did not purchase **TREEHOUSE FOODS, INC.**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in **TREEHOUSE FOODS, INC.** during the Class Period set forth in the Complaint are as follows:

      (See attached transactions)

5.    I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/15/2016
_____
Date

DocuSigned by:

*Annemarie Tarara*
023BA8E1DFC448D...
Annemarie Tarara

**Annemarie Tarara's Transactions in**
**Treehouse Foods, Inc. (THS)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 10/07/2016 | Bought | 3 | $87.0000 |