IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PUBLIC EMPLOYEES' RETIREMENT )
SYSTEM OF MISSISSIPPI, )
          Plaintiff, )
           )
v. )   16 C 10632
           )
TREEHOUSE FOODS, INC. ET AL )
          Defendants. )

## MEMORANDUM OPINION

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

Defendant TreeHouse manufactures store brand food products for grocery stores, warehouse chains and other retailers. Since 2006, TreeHouse has purchased twelve companies. In 2014, TreeHouse purchased Flagstone Foods, a competitor that sold snack nuts, trail mixes, dried fruits and other healthy snacks, for approximately $854 million. Plaintiffs allege that Defendants fraudulently represented that Flagstone was being successfully integrated into TreeHouse. In 2015, TreeHouse purchased the "Private Brands" business from ConAgra Foods, Inc. for approximately $2.7 billion. Plaintiffs contend that following these acquisitions, TreeHouse continued to fraudulently reassure the market that the acquisitions were successful. On November 3,

1

2016, TreeHouse disclosed that third quarter earnings would be substantially below expectations. On that same day, TreeHouse also announced the resignation of the Company's President, Christopher Silva. Company shares fell roughly 20%. Plaintiffs contend that as a result of Defendants' wrongful acts and omissions, and the subsequent decline in the market value of the Company's stock, Plaintiffs suffered significant loss and damages. Plaintiffs bring this putative class action lawsuit against Defendants for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (Act). *See* 15 U.S.C. §§ 78j(b) and 78t. Defendants now move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

Rule 9(b) provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)(quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The heightened pleading standard for fraud allegations set forth under Rule 9(b) works to prevent "the stigmatic injury that comes with alleging fraud," while balancing the "concomitant desire to ensure that such fraught allegations are not lightly leveled." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011); *See Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 627 (7th Cir. 1999)(stating that "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate.")(quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999))(internal quotations omitted). The Private Securities Litigation Reform Act of 1995 (PSLRA) raised the pleading standard for securities fraud claims even beyond Rule 9(b), imposing even more demanding requirements on plaintiffs filing §10b-5 claims. *See Merrill Lynch, Pierce,*

*Fenner & Smith Inc. V. Dabit*, 547 U.S. 71 (2006). The PSLRA requires the plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(3)(A). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." §78u-4(b)(2)(A). If these requirements under the PSLRA are not met, the Court must, on defendant's motion, dismiss the complaint. §78u-4(b)(3)(A).

## DISCUSSION

I. 10b-5 Claim

In the instant action, Plaintiffs allege that Defendants violated Section 10(b) of the Act and Rule 10b-5. Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the Securities and Exchange Commission, "[f]orbids a company or individual 'to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Makor Issues & Rights, Ltd. V. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008)(quoting 17 C.F.R. §240.10b-5(b)). The basic elements of a Rule 10b-5 claim are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and

4

the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). Defendants move to dismiss Plaintiff's 10b-5 claim because Plaintiff has not alleged any material misstatement, Plaintiff failed to allege that any statements were false at the time they were made, Plaintiff failed to allege a strong inference of scienter, Plaintiff failed to adequately allege loss causation and Plaintiff has failed to plead that the individual defendants made certain alleged misstatements.

A. Material Misstatement

Defendants contend that the complaint should be dismissed because Plaintiff failed to allege a material misstatement. Defendants argue that all of the misstatements and omissions alleged in the Complaint are immaterial as a matter of law. To plead a claim under Rule 10b-5, the plaintiff must allege "a material misrepresentation or omission by the defendant." *Id.* "The crux of materiality is whether, in context, an investor would reasonably rely on the defendant's statement as one reflecting a consequential fact about the company." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 596 (7th Cir. 2006); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (holding that an omitted fact is material if there is a substantial likelihood that its disclosure would have been viewed by the reasonable investor as having significantly altered the total mix of information made available).

1. Puffery

Defendants argue that numerous alleged misstatements are inactionable because they are statements of corporate optimism, or "puffery." Statements that are vague aspirations or unspecific puffery are not considered material statements. *Makor,* 437 F.3d at 596; *see Eisenstadt v. Centel Corp.,* 113 F.3d 738, 746 (7th. Cir. 1997)(stating that "Mere sales puffery is not actionable under 10b-5"). Defendants argue that general statements about the integration efforts of TreeHouse's employees, such as comments about TreeHouse's integration team "doing all the work" and an "incredible job" are not material. (Mot. 13). Defendants also argue that general statements about the progress of the Private Brands integration, such as comments about how the integration was "good," "great," "gaining momentum," and showing "great progress" are equally immaterial. (Mot. 14). Plaintiffs argue that Defendants continuously issued false or misleading statements that materially misrepresented the success of TreeHouse's Integration efforts.

Defendants argue that such statements would not "move the needle for a sophisticated investor," yet numerous analyst reports show that sophisticated investors did in fact consider these representations significant. (Resp. 10). Analysts such as J.P. Morgan, BB&T Capital, and Wells Fargo reported on Defendant's statements concerning integration and often used the same wording as Defendants. For example, Wells Fargo published a report noting that the "integration is off to a very strong start." (Resp. 10). As discussed in the complaint, TreeHouse was reliant on acquisitions to maintain growth levels and the acquisition of Flagstone and Private Brands were the largest acquisitions to date. Representations about the integration efforts and performance would therefore have

6

a profound significance to investors and it is possible that a reasonable investor considering such statements could believe there was a factual basis for such statements.

Defendants also argue that general statements about management's capabilities, such as management's "successful track record," "expertise and demonstrated ability," and prior "success" are exactly what investors would expect to hear from corporate management, but would not affect a sophisticated investor, and as such, are considered inactionable puffery. (Mot. 13). Defendants further argue that general descriptions of future expectations are also considered puffery. Plaintiffs argue that Defendants' statements contained substantive information about the health of the company and therefore are not puffery. TreeHouse made repeated representations that their management was handling business in a successful fashion. When such representations are taken in context, a sophisticated investor could believe that such comments were made in reference to actual current handling of actual risks and challenges and it is possible that a reasonable investor could believe there was a factual basis for such statements. Plaintiffs have presented enough support to show that Defendants' alleged misstatements and omissions were important to investors and that a reasonable investor could have believed there was a factual basis for such statements. Therefore, Plaintiffs have met the first pleading requirement of a material misstatement or omission.

2. PSLRA Safe Harbor

Defendants argue that numerous alleged misstatements are forward-looking and protected by the PSLRA's safe harbor. The PSLRA safe harbor provides that a defendant

7

cannot be held liable for forward-looking statements that are (i) accompanied by meaningful cautionary statements, (ii) immaterial, or (iii) made without actual knowledge. 15 U.S.C. §78u-5(c)(1). The PSLRA defines a "forward-looking statement" as (i) "a statement containing a projection of revenues" or other financial items; (ii) "a statement of the plans and objectives of management for future operations"; (iii) "a statement of future economic performance" or; (iv) any "statement of the assumptions underlying or relating to any" of the previous three categories. 15 U.S.C. §78u-5(i)(1).

Defendants argue that 15 of the alleged thirty-six false statements should be protected by the PSLRA's limited safe harbor for certain qualified forward looking statements. (Mot. 18). Defendants claim that statements such as "we've not seen anything that causes us to be concerned with our full-year guidance" and "solidly on track to deliver the earnings" are forward looking. However, Plaintiffs argue that these statements are not in fact forward-looking because they conveyed past or present facts and circumstances which were intended to, and actually did, give false reassurances about present company conditions. (Resp. 17). Courts have regularly held that such statements fall outside the safe harbor provision. *See Makor*, 513 F.3d at 705 (stating that a statement that the sales of a particular product were "still going strong" was not forward-looking at it meant "both that current sales were strong and that they would continue to be so, at least for a time, since the statement would be misleading if [defendant] knew that its sales were about to collapse"). Plaintiffs further argue that even if these statements were forward-looking, they were not accompanied by meaningful cautionary statements. A forward-looking statement must be identified as such, and accompanied by

8

meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statement. 15 U.S.C. §78u-5(c)(1)(A)(i). A company providing projections cannot simply include a generic list of factors that might affect future performance, but instead, must list the principal or important sources of variances from projections. *Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th Cir. 2004). Here, the Defendants did not disclose any specific concerns, but instead offered generic statements. The alleged misstatements do not fall within the PSLRA's safe harbor.

B. Failure to Allege That Statements Were False At Time They Were Made

Defendants argue that Plaintiff fails to allege that any statements were false at the time they were made. Under the PSLRA, a complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-5(b)(1). Even though the PSLRA imposes a heightened standard, it requires no proof as opposed to plausible allegations. *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006). The facts presented in plaintiff's complain are sufficient to support a reasonable belief as to the misleading nature of the statements or omissions.

C. Scienter

Defendants argue that even if plaintiff had alleged actionable misstatement, the complaint should still be dismissed because Plaintiff failed to meet its burden to allege facts giving rise to a strong inference of scienter. For actions brought under Rule 10b-5, a plaintiff "must prove that the defendant acted with scienter, 'a mental state embracing

9

intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)(quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976)). Under the PSLRA, a plaintiff must state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). To determine whether a plaintiff has met this obligation, the court "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs,* 551 U.S. at 310. Furthermore, "[t]he inference that the defendant acted with scienter need not be irrefutable, but it must be more than merely 'reasonable' or 'permissible'- it must be cogent and compelling, thus strong in light of other explanations." *Id.* When making this determination, the court must review all allegations holistically. *Id.* at 326. The complaint sufficiently alleges facts showing that defendant knew the statements were false or misleading.

D. Loss Causation

Defendants contend that Plaintiff has failed to adequately allege loss causation. For securities fraud actions brought under Rule 10b-5, plaintiffs must plead adequately transaction causation as well as loss causation. *Caremark, Inc. V. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997); *See Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.), *cert. denied* 496 U.S. 906 (1990)(holding that it is insufficient for an investor to allege only transaction causation- that but for the fraud it would not have invested. Rather, the investor must also allege loss causation- that it was the very facts about which the defendant lied which caused the injuries). *See Tricontinental Industries,*

10

*Ltd. V. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007)(stating that "[t]o plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of the sale. To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which cause its injuries.")(quoting *Caremark,* 113 F.3d at 648)(internal quotations omitted). To adequately plead loss causation, "the plaintiff must allege that it was the very facts about which the defendant lied which cause its injuries." *Caremark,* 113 F.3d at 648. Plaintiffs contend that the third quarter 2016 operating results revealed the truth about the inability to successfully integrate Flagstone and Private Brands and that if Defendants had revealed the truth earlier, TreeHouse stock would not have traded at such inflated levels. (Compl. 309-10). This is adequate under Rule8(a), as well as any heightened pleading standard, to allege loss causation.

E. Failure to Plead That Individual Defendants Made Certain Alleged Misstatements

Defendants argue that Plaintiff has failed to plead that the individual defendants made certain alleged misstatements. To plead Rule 10b-5 liability as to an individual, a plaintiff must show that the particular defendants actually made the untrue statements of material fact at issue. 17 C.F.R. §240.10B-5(b). "The maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Therefore, corporate insiders are not liable under Rule 10b-5 unless they make the alleged misstatements under the *Janus* standard. Plaintiff has adequately shown

11

that the individual defendants made certain alleged misstatements.

II. 20(a) Claims

Defendants move to dismiss Plaintiff's Section 20(a) claim. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person[.]" 15 U.S.C. §78t. Thus, in order "to state a claim under § 20(a), a plaintiff must first adequately plead a primary violation of securities laws." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). Defendants argue that Plaintiff's Section 20(a) claim should be dismissed because Plaintiffs have failed to state a primary violation of the securities law. However, this court concludes that Plaintiffs have adequately plead a primary violation of the Act and therefore, this court rejects Defendants' argument. Therefore, the motion to dismiss Plaintiff's Section 20(a) claim is denied.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 12, 2018