UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>TREEHOUSE FOODS, INC., SAM K. REED, DENNIS F. RIORDAN and CHRISTOPHER D. SLIVA,<br><br>             Defendants. | Case No.: 16-CV-10632 |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated as of July 13, 2021 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff, The Public Employees' Retirement System of Mississippi ("Lead Plaintiff") (on behalf of itself and each of the Class Members),[1] by and through its counsel of record in the Litigation; and (ii) TreeHouse Foods, Inc. ("TreeHouse" or the "Company"), Sam K. Reed, Dennis F. Riordan, and Christopher D. Sliva (together, "Defendants"). Lead Plaintiff, the Class, and Defendants are collectively referred to herein as the "Parties" or the "Settling Parties." This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

---

[1] All undefined terms with initial caps are defined below in Section IV(1).

1

## I.     THE LITIGATION

This Litigation is pending in the United States District Court for the Northern District of Illinois (the "Court").  The initial complaint in this action was filed on November 1 6 , 2016. Dkt No. 1.   On January 25, 2017, the Court appointed Lead Plaintiff and Lead Counsel.  Dkt. No. 42.  On March 24, 2017, Lead Plaintiff filed an Amended Consolidated Complaint.  Dkt. No. 45.

Lead Plaintiff brought this securities fraud class action on behalf of all persons and entities who purchased TreeHouse common stock on the open market between January 20, 2016, and November 2, 2016, inclusive, and who were damaged thereby. Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5 ("Rule 10b-5").

Defendant TreeHouse manufactures private label or "store brand" food products for grocery stores, warehouse chains, and other retailers.  TreeHouse's strategy for market growth turned in part on acquiring and integrating other private label food companies, and TreeHouse had purchased twelve companies between 2006 and 2015.  In 2014, TreeHouse purchased Flagstone Foods for more than $850 million in its then-largest acquisition to date. Lead Plaintiff alleges that Defendants misrepresented to investors and analysts that Flagstone was being smoothly integrated into TreeHouse.

In 2015, TreeHouse purchased the "Private Brands" business from ConAgra Foods, Inc. for more than $2.7 billion.  TreeHouse's acquisitions of Flagstone and Private Brands nearly tripled its size.  Lead Plaintiff alleges that TreeHouse continued to misrepresent to the market that its recent large acquisitions were successful.

Lead Plaintiff contends that TreeHouse's stock traded at an inflated level because of Defendants' alleged wrongful acts and omissions.  On November 3, 2016, TreeHouse disclosed that third quarter earnings would be below expectations, and Company shares fell roughly 20%.  It is alleged that the Company's November 3, 2016 public statements constituted corrective disclosures about TreeHouse's integration of Flagstone and Private Brands, resulting in Lead Plaintiff and the other Class Members suffering loss and damages.

Defendants have denied and continue to deny all of Plaintiffs' allegations. Defendants have denied and continue to deny any wrongdoing whatsoever or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws.  Defendants have denied and continue to deny each and every one of the claims that was alleged or could have been alleged in the Litigation, including all claims in the Complaint, as well as any allegations that Lead Plaintiff or any member of the Class has suffered damages or was otherwise harmed by the conduct alleged in the Litigation. Defendants believe that the claims asserted against them in the Litigation are without merit.

On May 26, 2017, Defendants filed a motion to dismiss.  Dkt. No. 58.  In a Memorandum Opinion and Order entered on February 12, 2018, the Court denied Defendants' motion to dismiss.  Dkt. No. 75.

The Parties served initial disclosures on May 25, 2018.  Starting on June 1, 2018, the Parties began serving document requests and interrogatories. After serving objections and responses to the various discovery requests, the Parties began producing documents after meeting and conferring multiple times and agreeing upon search terms.  Defendants eventually produced more than 50,000 documents, comprising over 200,000 pages.

Lead Plaintiff also served 14 third party subpoenas. Lead Plaintiff's counsel had multiple meet and confer conferences with each of these subpoenaed third parties to define and narrow the scope of their respective productions of documents. Approximately 4,000 documents were produced by these third parties.

During the course of discovery, Defendants deposed two representatives of Lead Plaintiff: Special Assistant Attorney General George Neville and Lorrie Tingle. Defendants also deposed Lead Plaintiff's class certification expert, Chad W. Coffman of Global Economics Group. Lead Plaintiff deposed Defendants' class certification expert, Dr. Paul Zurek of Cornerstone.

On July 13, 2018, Lead Plaintiff moved to certify a class consisting of all persons and entities who purchased TreeHouse common stock on the open market between January 20, 2016, and November 2, 2016, inclusive, and who were damaged thereby. Dkt. No. 93. After Lead Plaintiff filed its opening class certification brief, and Defendants filed their opposition to the class certification motion on October 8, 2018 (Dkt. No. 106), the Parties agreed to attempt to resolve the Litigation through mediation and stayed the Litigation. Dkt. No. 108. On March 19, 2019, the Parties participated in a full-day mediation before Michelle Yoshida of Phillips ADR, which proved unsuccessful.

After the mediation, the Parties completed class certification discovery and briefing. On February 26, 2020, the Court issued an order granting the class certification motion and certifying Lead Plaintiff as class representative. Dkt. No. 152. On March 11, 2020, Defendants filed a Rule 23(f) interlocutory appeal petition with the Seventh Circuit Court of Appeals with respect to the class certification order. On May 4, 2020, after full briefing requested by the Seventh Circuit, the petition was denied.

On March 10, 2020, the Court again stayed proceedings to allow the Parties to recommence mediation proceedings before a different mediator. *See* Dkt. 153. The Parties engaged the services of Gregory P. Lindstrom of Phillips ADR, a nationally recognized mediator (the "Mediator"). Because of the restrictions on travel and in-person gatherings imposed by COVID-19, the Parties conducted the mediation process entirely remotely. The Parties engaged with the Mediator on Zoom and telephonic meetings, exchanged mediation statements and reply mediation statements, and provided additional memoranda and other documents as requested by the Mediator. On February 4, 2021, after an extended mediation process that spanned nearly 11 months, the Parties mutually agreed in principle to accept the Mediator's written proposal to settle the Litigation, subject to various conditions, definitive documentation and Court approval. The agreement included, among other things, the Settling Parties' agreement to settle and release all claims that were or could have been asserted in the Litigation in return for a cash payment of $27,000,000, for the benefit of the Class, subject to various conditions including the negotiation of the terms of a Stipulation of Settlement and approval by the Court. This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement among the Settling Parties.

## II.    DEFENDANTS' DENIALS OF WRONGDOING, LIABILITY & THE MERITS OF PLAINTIFF'S CLAIMS

Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934 or Rule 10b-5 or otherwise.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be deemed or construed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever, which, to the contrary, are expressly denied, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants believe Plaintiff's claims are without merit and that none of the evidence developed to date, or that would be developed if the case was litigated, supports or would support Plaintiff's claims.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.    LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports its claims. However, Lead Plaintiff and its counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and its counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and its counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits

upon the Class. Based on their evaluation, Lead Plaintiff and its counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class.

## IV. TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff, the Class, and Defendants, by and through their counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation and the Released Claims shall be finally, fully and forever compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1. Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1 "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2 "Claims Administrator" means the firm of A.B. Data, Ltd..

1.3 "Class" means all Persons who purchased TreeHouse common stock on the open market during the Class Period and who were damaged thereby. Excluded from the Class are: Defendants (TreeHouse, Sam K. Reed, Dennis F. Riordan, and Christopher B. Sliva), the officers and directors of TreeHouse, members of their Immediate Families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who satisfies the criteria for being a member of the Class but validly and timely requests exclusion in accordance with the requirements set by the Court.

1.4     "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5     "Class Period" means the period from January 20, 2016 to November 2, 2016, inclusive.

1.6     "Defendants" means TreeHouse, Sam K. Reed, Dennis F. Riordan, and Christopher D. Sliva.

1.7     "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶ 8 . 1 of the Stipulation have been met and have occurred or have been waived.

1.8     "Escrow Agent" means Huntington National Bank or its agents.

1.9     "Final" means when the last of the following with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the final determination of that motion or appeal such that no further judicial review or appeal is permitted, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any request for leave to appeal, petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an

order issued with respect to (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.10    "Immediate Family" means any spouse, parent, step-parent, grandparent, child, step-child, grandchild, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.11    "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.12    "Lead Counsel" means the law firm of Wolf Popper LLP.

1.13    "Lead Plaintiff" means the Public Employees' Retirement System of Mississippi, also referred to herein variously as "Plaintiff."

1.14    "Litigation" means the action captioned *Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc.*, Case No. 16-CV-10632.

1.15    "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.16    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and

other entity, business, legal or otherwise, and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.17 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.18 "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit C-2, which a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.19 "Related Parties" means each Defendant's respective former, present or future parent companies, controlling shareholders, subsidiaries, divisions and affiliates and the respective present and former employees, members, managers, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors, accountants, auditors, and insurers and reinsurers of each of them; and the predecessors, successors, estates, Immediate Family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them.

1.20 "Released Claims" means any and all claims, causes of action, demands, rights, potential actions, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, fines, costs, penalties and sanctions of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual (but not

10

derivative) in nature, that Plaintiff or any other Class Member asserted in the Litigation or could have asserted, or could in the future assert, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, foreseen or unforeseen, in any forum that arise out of or are based upon or related in any way to (a) the purchase of TreeHouse common stock during the Class Period, and (b) the subject matter, allegations, transactions, acts, facts, matters, occurrences, representations, statements, or omissions involved, set forth, or referred to in the Litigation. "Released Claims" includes "Unknown Claims" as defined in ¶ 1.29 hereof.

1.21    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Litigation, except for claims relating to the enforcement of the Settlement.

1.22    "Released Persons" means each and all of the Defendants and their Related Parties.

1.23    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.24    "Settlement Amount" means Twenty-Seven Million Dollars ($27,000,000) in cash to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.1 of this Stipulation.

1.25    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.26    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.27     "Settling Parties" means, collectively, Defendants, Plaintiff, and the Class.

1.28     "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.29     "Unknown Claims" means (a) any and all Released Claims which Plaintiff, Lead Counsel, or any Class Member does not know or suspect to exist in their favor at the time of the release of the Released Persons, which, if known by him, her, or it, might have affected their settlement with and release of the Released Persons, or might have affected their decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in their favor at the time of the release of the Plaintiff, Lead Counsel, or any Class Members, which, if known by him, her, or it, might have affected their settlement and release of Plaintiff, Lead Counsel, or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive and, more specifically, each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States,

12

or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to, or different from, those that they or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties expressly settle and release, and, specifically, each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

## 2. The Settlement

### a. The Settlement Amount

2.1     In consideration of the terms of this Stipulation, TreeHouse shall cause the Settlement Amount to be paid into the Escrow Agent by check or wire transfer in accordance with instructions to be provided by the Escrow Agent, on or before the later of: (i) twenty-one (21) calendar days after the entry of the Preliminary Approval Order, as defined in ¶3.1 herein, or (ii) ten (10) business days after the provision to Defendants of all information necessary to effectuate a transfer of funds, including, but not limited to, the bank name and ABA

routing number, account name and number, and a signed W-9 reflecting the taxpayer identification number for the Settlement Fund. The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent invested as set forth in ¶2.4, below.

2.2     If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel in its discretion may exercise all rights under this Stipulation or terminate the Settlement but only if: (i) Lead Counsel has notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.3     Other than the obligation to pay or cause to be paid the Settlement Amount into the Escrow Account set forth in ¶2.1 herein, Defendants shall have no obligation to make any other payment, into the Settlement Fund or otherwise, pursuant to this Stipulation, and shall have no responsibility, obligation, or liability with respect to the Escrow Account or the monies maintained in the Escrow Account or the administration of the Settlement, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

### b.     The Escrow Agent

2.4     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set

14

forth in this paragraph shall be borne by the Settlement Fund, and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent, except their reversionary interest in the Settlement Fund to the extent the Effective Date does not occur pursuant to ¶2.11, below.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' counsel.

2.6    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent, except their reversionary interest in the Settlement Funds to the extent the Effective Date does not occur pursuant to ¶2.11, below.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8    After the Court issues the Preliminary Approval Order, and notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval and/or order of the Court, reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, administering the Settlement, and paying escrow fees and costs, if any, and, after the Effective Date, assisting with the submission of claims, processing Proof of Claim and Release forms ("Notice and

Administration Expenses"). The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

### c. Taxes

2.9 (a) The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.4688-1. The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.4688-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. §1.4688-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the elections described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid

out of the Settlement Fund as provided in ¶ 2 . 9 (c) hereof.

(c)    All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2 . 9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2 . 9 ) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.4688-2(1)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2 . 9 .

2.10    This is not a claims-made settlement.  As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

### d.    Termination of Settlement

2.11    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.8 and 2.9 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' counsel in accordance with ¶8.6 herein.

### 3.    Preliminary Approval Order and Settlement Hearing

3.1    Within ten (10) calendar days after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia,* the preliminary approval of the Settlement set forth in this Stipulation and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits C-1 and C-3 attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below.

3.2     It shall be solely the responsibility of Lead Counsel and the Claims Administrator to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process or otherwise.

3.3     Lead Counsel shall request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 ("CAFA") as set forth in ¶3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4     Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate State official of each State in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of CAFA.  Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.     Releases**

4.1     Upon the Effective Date, as defined in ¶1.7 hereof, Plaintiff shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (including without limitation Unknown Claims) against the Released Persons, whether or not such Class Member

executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

4.2    Any Proof of Claim and Release that is executed by a Class Member shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit C-2 attached hereto.

4.3    Upon the Effective Date, Plaintiff, all Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum or other forum of any kind, asserting any Released Claims against any of the Released Persons.

4.4    Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against Plaintiff, each and all of the Class Members, and Lead Counsel. Claims to enforce the terms of this Stipulation are not released.

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses;

(c)    to pay attorneys' fees and expenses of Lead Counsel and reimbursement of

Plaintiff's expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3     After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4     Within one hundred-twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Class Member who seeks to share in the Net Settlement Fund shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit C-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within 120 days after the mailing of the Notice, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects continue to be subject to and bound by the provisions of this Stipulation, the releases contained herein, the Judgment, and the bar against bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund

21

to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiff, its counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim and Release shall be submitted to, and reviewed by, the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶ 5.8 below.

5.8     If any claimant whose timely claim has been rejected in whole or in part for a curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who does not request to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim or status as a member of the Class, including, but not limited to, all releases contained herein, the Judgment, and the bar against bringing any action against the Released Persons concerning the Released Claims, and the claim will be subject to investigation and discovery from the claimant under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim. In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement or sought from any party or Person other than claimants.

5.10    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest as approved by the Court in the Judgment. This is not a claims-made settlement. There will be no reversion of remaining funds to TreeHouse, the Officer Defendants or their insurers.

5.11    Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding

of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶5.1-5.13 hereof; and Class Members, Plaintiff, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12    No Person shall have any claim against any Released Persons, Plaintiff, Lead Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

## 6.    Class Member Exclusions and Objections

6.1    Each Class Member shall be bound by all determinations and judgments in the Litigation, including, but not limited to, the releases provided for herein, whether favorable or unfavorable to the Class, unless such Class Member seeks exclusion from the Class.

6.2     A putative Class Member wishing to exclude themself from the Class shall mail or deliver the request to the Claims Administrator so that it is received no later than thirty (30) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), to the address designated in the Notice.  The putative Class Members seeking to exclude themselves from the Class shall bear the risk of delivery of the request.

6.3     Such request for exclusion shall clearly indicate the name, address, and telephone number of the Person seeking exclusion and that the sender requests to be excluded from the Class and must be signed by such Person.  All Persons requesting exclusion must also state and provide proof of: the date(s), price(s), and number(s) of shares of TreeHouse common stock they purchased and sold during the Class Period.

6.4     Putative Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund as described in the Stipulation and Notice.

6.5     Copies of all requests for exclusion shall be provided to counsel for Lead Plaintiff and Defendants, as expeditiously as possible, but in no event later than three (3) business days after receipt by the Claims Administrator.

6.6     Any Class Member that does not request exclusion from the Class may file an objection or statement in support of the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees and expenses, including Lead Plaintiff's expenses. Any such objection or statement and any supporting papers shall be filed with the Court at least thirty (30) calendar days prior to the Settlement Hearing (or other date as prescribed by the Court), and also delivered by hand, email at the address listed in Paragraph 10.12 below, or First-Class Mail to Chet B. Waldman, Wolf Popper LLP, 845 Third Avenue, 12th Floor, New York, NY 10022

and James P. Smith III, Winston & Strawn, 200 Park Avenue, New York, NY 10166, by that same date.

6.7     Any such objection or statement must: (a) clearly indicate the Class Member's name, mailing address, daytime telephone number and e-mail address; (b) state whether the Class Member is seeking to be heard with respect to the proposed Settlement, Plan of Allocation, and/or Fee and Expense Application (as defined below) in *Public Employee's Retirement System of Mississippi v. TreeHouse Foods, Inc.*, Case No. 16-CV-10632; (c) specify the reason(s), if any, for the objection or statement, including any legal support for such objection or statement; (d) state the number of shares of TreeHouse common stock purchased and sold during the Class Period; (e) list the date(s) and price(s) of TreeHouse common stock purchased and sold during the Class Period; and (f) provide written documentation (whether from the objector's bank, broker or otherwise) of such trading.  In order to be considered, an objection also must be signed by the Class Member making the objection.

6.8     Attendance at the Settlement Hearing is not necessary.  However, any persons wishing to be heard orally, either individually or through counsel of their own choice, in opposition to, or support of, the approval of the Settlement, the Plan of Allocation, and/or the request by Lead Counsel for attorneys' fees and expenses, are required to indicate in a timely written objection or statement pursuant to ¶¶6.6 and 6.7 hereof their intention to appear at the Settlement Hearing and to include in such written objection or statement the identity of any witnesses they may call to testify and copies of any exhibits they intend to introduce into evidence at the Settlement Hearing.

6.9     Class Members do not need to appear at the hearing or take any other action to indicate their approval.  Lead Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objection or statements that come into their possession.

6.10    Any Class Member who does not object to the Settlement, Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses in the manner prescribed herein and in the Notice, shall be deemed to have waived such objection and their right to object to the Settlement, the Judgment, the Plan of Allocation, and Lead Counsel's Fee and Expense Application, shall be deemed a Class Member and shall forever be barred and foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, this Order, the Final Judgment, the Plan of Allocation, and/or the Fee and Expense Application, and from otherwise being heard concerning the Settlement, this Order, the Judgment, the Plan of Allocation, or Lead Counsel's Fee and Expense Application in this or any other proceeding.

### 7.      Lead Counsel's Attorneys' Fees and Expenses

7.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees from the Settlement Fund; plus (b) expenses or charges from the Settlement Fund in connection with prosecuting the Litigation; plus (c) reimbursement for Lead Plaintiff's time and expenses in connection with its work on behalf of the Class from the Settlement Fund; plus (d) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court from the Settlement Fund.  An application for fees and expenses may include a request for reimbursement of Plaintiff's verifiable reasonable costs and expenses

pursuant to the Private Securities Litigation Reform Act of 1995. Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

7.2     Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, within three (3) business days after the Court enters an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among Lead Plaintiff's counsel in a manner in which Lead Counsel in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and the Fee and Expense Award has been paid to any extent, then Lead Counsel who has received any portion of the Fee and Expense Award shall, within seven (7) calendar days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction or an objecting Class Member, refund to the Settlement Fund all such fees and expenses previously paid to Lead Counsel from the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, in an amount consistent with such reversal, modification, cancellation or termination.

7.4     The procedure for the allowance or disallowance by the Court of a Fee and Expense Application by Lead Counsel is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to

28

the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the Released Persons, or any other orders entered pursuant to this Stipulation.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to fees and expenses in the Litigation.

7.5    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of TreeHouse's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.1 and to provide CAFA notice as described in ¶3.4, Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

## 8.    Conditions of Settlement, Effect of Disapproval,  Cancellation, or Termination

8.1    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account;

(c)    the time for TreeHouse to exercise its option to terminate the Stipulation pursuant to ¶8.3 hereof has passed without any such termination;

(d)    the Court has entered the Judgment, or a judgment substantially in the form of

29

Exhibit B attached hereto, following notice to the Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(e)     the Judgment has become Final, as defined in ¶1.9 hereof.

8.2     Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If the conditions specified in ¶8.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶8.5, 8.6 or 8.7 hereof unless Plaintiff and Defendants mutually agree in writing to proceed with the Settlement.

8.3     TreeHouse shall have the right to terminate the Settlement and render it null and void in the event that Class Members who purchased more than a certain number of TreeHouse common shares during the Class Period subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiff and TreeHouse.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

8.4     Plaintiff or TreeHouse shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other

parties hereto within fifteen (15) business days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; (d) the date upon which the Judgment is modified or reversed in any material respect by the Court, the U.S. Court of Appeals for the Seventh Circuit, or the Supreme Court of the United States; or (e) the Settlement or the Judgment does not become Final or the Effective Date does not occur for any reason.

8.5     If, before the Settlement becomes Final, TreeHouse files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by TreeHouse to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned to TreeHouse out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Plaintiff, the Settlement may be terminated and the Judgment, including the releases pursuant thereto, shall be null and void.

8.6     Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within fifteen (15) business days after written notification of such event is sent by Defendants' counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed

pursuant to ¶¶2.8 and/or 2.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.8 and/or 2.9 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution. Such refunds shall be pursuant to written instructions from Defendants' counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to the same Persons in the same manner as the Settlement Fund described in this ¶8.6. Such payments shall be pursuant to written instructions from Defendants' counsel.

8.7   In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of July 13, 2021. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.29, 2.3-2.11, 7.3-7.4, 8.4-8.7, and 10.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation, in any other proceeding or otherwise for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation (except to enforce its surviving terms) shall be treated as vacated, *nunc pro tunc.* No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

8.8   If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Plaintiff nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.8 or 2.9 hereof. In addition, any amounts already incurred

pursuant to ¶¶2.8 or 2.9 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.11, 8.6 and 8.7 hereof.

### 9. No Admission of Wrongdoing

9.1     Defendants vigorously deny any wrongdoing and liability and maintain that their conduct at all times was legal and proper. Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), any of the terms of this Stipulation, the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered or received against any Defendant as evidence of or deemed or construed to be evidence of or constitute any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiff or any Class Member or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, damage, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered or received against any Defendant as evidence of or be deemed or construed as evidence of or to constitute any presumption, concession, admission or finding of any fault, misrepresentations, or omission with respect to any statement or written

33

document approved or made by any Defendant, or against Plaintiff or any Class Member as evidence of any infirmity in the claims of Plaintiff and the Class;

> (c) shall be offered or received against any Defendant as evidence of or deemed or construed as evidence of or to constitute any presumption, concession, admission or finding of any liability, negligence, fault, damage or wrongdoing whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted, or in any way referred to for any other reason as against any of the Settling Parties in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the releases granted them hereunder or otherwise to enforce its terms or the Judgment; or

> (d) shall be deemed or construed against Defendants, Plaintiff, or the Class as an admission or concession that the consideration to be given hereunder represents an amount which could be or would have been recovered after trial.

## 10. Miscellaneous Provisions

10.1   The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

10.2   No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in- interest.

10.3   The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were, are or could have been contested and shall not be deemed an admission by any

Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel and with the aid of a mediator. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.4     Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support any defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion, issue preclusion, bar or similar defense or counterclaim.

10.5     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

10.7     This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. No representations, warranties, or inducements

have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

10.8    Except as otherwise provided herein, each party shall bear their own fees and costs.

10.9    Lead Counsel, on behalf of the Class, are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which they deem appropriate.

10.10   Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.11   This Stipulation may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or pdf via e-mail shall be deemed originals.

10.12   Other than as provided in Paragraphs 6.2 and 6.6, all notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given when delivered by electronic mail addressed to the intended recipient as set forth below:

> *If to Plaintiff or to Lead Counsel:*
>
> Chet B. Waldman – cwaldman@wolfpopper.com
>
> *If to Defendants or to Defendants' Counsel:*
>
> James P. Smith III – jpsmith@winston.com

10.13   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.14   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

10.15   Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

10.16   This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Illinois without giving effect to its choice-of-law principles.

10.17   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.18   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

10.19   The Parties agree that neither side will make or cause to be made any public statements regarding the Settlement, other than the public notices described in this Agreement, and notification of the Settlement on counsel's websites, any statements in court regarding the Settlement or as required by the federal securities laws.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of July 13, 2021.

WOLF POPPER LLP

_____
Chet B. Waldman
Robert C. Finkel
Matthew Insley-Pruitt
Antoinette Adesanya
845 Third Ave., 12th Flr.
New York, NY 10022

*Lead Counsel for Plaintiff and the Class*

WINSTON & STRAWN

_____
James P. Smith III
200 Park Ave.
New York, NY 10166

*Counsel for Defendants*

38